**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

DANA MARIA SETZER-WHITE and DEBORA JO SETZER,

Plaintiffs,

v.

EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; WELLS FARGO BANK, N.A. d/b/a WELLS FARGO AUTO; HYUNDAI CAPITAL AMERICA d/b/a KIA MOTORS FINANCE,

Defendants.

Case No.: 0:21-cv-00153

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. FCRA, 15 USC § 1681, *et seq.*

Plaintiffs Dana Maria Setzer-White ("Dana") and Debora Jo Setzer ("Debora") (collectively, "Plaintiffs"), through Plaintiffs' attorneys, allege the following against Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Wells Fargo Bank, N.A. d/b/a Wells Fargo Auto ("Wells Fargo"), and Hyundai Capital America d/b/a KIA Motors Finance ("KIA") (collectively, "Defendants"):

## INTRODUCTION

1. Plaintiffs' Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. against Defendants Equifax and Experian, each a consumer reporting agency, for reporting inaccurate information on Plaintiffs' credit

reports. Plaintiffs' Complaint also alleges violations of the FCRA against Defendants Wells Fargo and KIA for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiffs' disputes from Defendants Equifax and Experian.

**JURISDICTION AND VENUE**

2. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

3. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

4. Defendants transact business here; as such, personal jurisdiction is established.

**PARTIES**

5. Plaintiffs are natural persons residing in the city of Albertville in Wright County, Minnesota.

6. Plaintiffs are *consumers* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Defendants Wells Fargo and KIA are financial institutions engaged in the business of giving credit and collecting debt. Wells Fargo and KIA are also *furnishers*, as defined in 15 U.S.C. § 1681s-2. Upon information and belief, Wells Fargo and KIA are regularly engaged in the business of furnishing credit information to the credit reporting agencies. Wells Fargo is headquartered in San Francisco, California and can be served through its registered agent, Corporation Service Company, located at 2345 Rice Street, Ste. 230, Roseville, Minnesota 55113. KIA is headquartered in Irvine, California and can

be served through its registered agent, National Registered Agents, Inc. located at 1010 Dale St. N., St. Paul, Minnesota 55117-5603.

8. Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309.

9. Defendant Experian is a credit reporting agency, as defined in 15 U.S.C. § 1681a(f)). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

10. Upon information and belief, Defendants Equifax and Experian, and non-party Trans Union, LLC ("Trans Union") (referenced together as "credit reporting agencies" or "CRAs") disburse *consumer reports* to third parties under contract for monetary compensation.

11. At all relevant times, Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

12. Any violation of the FCRA by Defendants was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

13. Defendants Equifax and Experian report consumer information about Plaintiffs and other consumers through the sale of consumer reports (credit reports).

14. Equifax and Experian credit reports generally contain the following information: (i) *Header/Identifying Information*: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) *Tradeline Information*: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) *Public Record Information*: this section typically includes public record information, such as bankruptcy filings; and (iv) *Credit Inquiries*: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

15. Defendants Equifax and Experian gain access to consumer information from various sources, including furnishers who provide consumer information to them, and information they independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER.

16. The information reported by Defendants Equifax and Experian contributes to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in their consumer credit reports.

17. The vast majority of financial services lenders (e.g., banks, creditors, lenders) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

18. These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

19. FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

20. Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

21. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

22. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, the longer that a delinquent account stays current after being remedied, the more a consumer's FICO Score should increase.

23. Defendants Equifax and Experian obtained and reported Plaintiffs' consumer bankruptcy information in both the Public Records section of their consumer credit reports, as well as individual account tradelines in their credit reports.

24. Defendants Equifax and Experian had notice of Plaintiffs' bankruptcy through their independent collection of consumer information as well as from information provided to them by tradeline furnishers. Defendants Equifax and Experian reported Plaintiff's bankruptcy filing and/or discharge in the public record section of their credit reports, as well as individual account tradelines.

25. Defendants Equifax and Experian are well aware that the effect of a discharge order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

26. Defendants Equifax and Experian are also aware of the effect of a reaffirmation of debt, which excludes the debt from the bankruptcy discharge.

27. Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Defendants Equifax and Experian obtain the bankruptcy case information, as well as from information provided to Defendants Equifax and Experian from furnishers of account/tradeline information.

28. Rather than follow reasonable procedures to assure maximum possible accuracy, Defendants Equifax and Experian report information regarding pre-bankruptcy debts even if that information ignores or contradicts information already known by them, information provided by furnishers of account/tradeline information, and/or information contained in public court records that they have obtained through their independent efforts, or could easily obtain through reasonably available public records.

29. Defendants Equifax and Experian are on continued notice of their inadequate post-bankruptcy reporting procedures, including pertaining to account and payment statuses, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against them for their inaccurate reporting following a consumer bankruptcy.

30. In or around March 2018, Plaintiffs obtained an auto loan from KIA ("the KIA Account").

31. In or around November 2018, Plaintiffs obtained an auto loan from Wells Fargo ("the Wells Fargo Account").

32. On or about March 4, 2020, Plaintiffs filed for a voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota (Minneapolis), petition no. 20-bk-40639.

33. On or about April 15, 2020, Plaintiffs reaffirmed their obligations under the Wells Fargo Account, whereby Plaintiffs remained personally liable/responsible for continued payment on the account. The Wells Fargo Account was therefore not included in Plaintiffs' subsequently entered bankruptcy discharge.

34. On or about May 26, 2020, Plaintiffs reaffirmed their obligations under the KIA Account, whereby Plaintiffs remained personally liable/responsible for continued payment on the account. The KIA Account therefore also was not included in Plaintiffs' subsequently entered bankruptcy discharge.

35. Plaintiffs received a discharge in bankruptcy court on or about June 23, 2020.

36. Plaintiffs filed for bankruptcy and reaffirmed the Wells Fargo Account and KIA Account to rebuild and improve their credit.

37. After Plaintiffs' bankruptcy was discharged, Plaintiffs were eager to obtain a "fresh start."

38. Sometime after Plaintiffs' bankruptcy discharge, Plaintiffs obtained their Experian, Equifax, and Trans Union consumer credit reports to ensure that their credit account tradelines and bankruptcy were being reported accurately.

39. Plaintiffs learned Defendants Experian, Equifax and Trans Union were inaccurately reporting Plaintiffs' reaffirmed Wells Fargo Account and KIA Account as having been included in Plaintiffs' bankruptcy, and subject to bankruptcy coding that conveys to creditors/lenders that the account was discharged or non-current/non-paid, even though Plaintiffs continued to make ongoing payments on the accounts.

40. Before filing for bankruptcy, Plaintiffs never missed a payment on the Wells Fargo and KIA Accounts. Plaintiffs have since continued to make timely payments on the accounts and are current on all payments to date on the accounts.

41. Plaintiffs reaffirmed the Wells Fargo and KIA Accounts during bankruptcy, remaining personally liable for the obligations. The accounts (debts) indisputably were not discharged. Plaintiffs did this to maintain some of their credit history and to rebuild/re-establish credit through timely monthly payments on the reaffirmed accounts.

42. However, when Plaintiffs pulled their credit reports, Plaintiffs discovered that Defendants Experian, Equifax and Trans Union were not accurately reporting the Wells Fargo and KIA Accounts' payment history, despite reaffirmation of the debts.

43. Defendants Equifax, Experian, and Trans Union's reporting was therefore patently false and materially misleading, as the Wells Fargo and KIA Accounts were reaffirmed and not discharged by Plaintiffs' bankruptcy and Plaintiffs continued to make timely monthly payments on the accounts. As reported, Defendants Equifax and Experian fail to report the correct payment history and ongoing payments, and/or report false payment statuses that indicate that the accounts were included in and/or discharged in bankruptcy, instead of their true status of reaffirmed.

44. Plaintiffs' payment history on the Wells Fargo and KIA Accounts is important to Plaintiffs' efforts to reestablish their credit and maintain their previous positive credit history.

45. On or about September 21, 2020, Plaintiffs each sent letters to Experian, Equifax, and Trans Union disputing their inaccurate reporting of the Wells Fargo and KIA Accounts.

46. The letters each specifically advised that Plaintiffs did not include the Wells Fargo and KIA Accounts in their bankruptcy, remained personally obligated for the accounts, and continued to make regular payments on the accounts.

47. Upon information and belief, Experian, Equifax, and Trans Union received Plaintiffs' dispute letters.

48. Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiffs' disputes to Wells Fargo and KIA within 5 business days of receipt.

49. On or about October 22, 2020, non-party Trans Union responded to each of Plaintiffs' dispute letters. Trans Union updated the Wells Fargo and KIA Account

tradelines to indicate that the Wells Fargo and KIA Accounts had been reaffirmed – not discharged – in Plaintiffs' bankruptcy and accurately reported Plaintiffs' payment history.

50. On or about October 20, 2020, Equifax responded to each of Plaintiffs' dispute letters.

51. Equifax's response to Debora indicated that it had completed an investigation and updated the disputed tradelines, but it would continue to report both the Wells Fargo and KIA Accounts as included in bankruptcy.

52. Equifax's response to Dana indicated that it had completed an investigation and updated the disputed tradelines, but it would continue to report the Wells Fargo Account as included in bankruptcy. The KIA Account tradeline was corrected to indicate the reaffirmation in bankruptcy and that it was being paid "as agreed."

53. On or about October 21, 2020, Experian responded to each of Plaintiffs' dispute letters.

54. Experian's response to Dana indicated that it had completed an investigation and updated the disputed tradelines, and had corrected the Wells Fargo and the KIA Accounts to indicate the reaffirmation in bankruptcy and report Debora's payment history on the account as "never late."

55. Experian's response to Debora indicated that it had completed an investigation and updated the disputed tradelines, but it would continue to report the KIA Account as included and discharged in bankruptcy. In fact, Experian made things worse for Debora by deleting KIA Account payment history for the March 2020 to August 2020 time period. The Wells Fargo Account was corrected to indicate the reaffirmation in

bankruptcy and report Debora's payment history on the account as "never late."

56. Upon information and belief, Equifax did not investigate Plaintiffs' disputes and merely forwarded automated dispute forms to Wells Fargo and KIA. Rather than perform an investigation based on Plaintiffs' disputes, reasonably available public records, and information known by Equifax through Plaintiffs' reported payment history regarding the Wells Fargo and KIA Accounts, Equifax merely parroted information furnished by Wells Fargo and KIA, despite awareness that the information was factually inaccurate and conflicted with information known by Equifax.

57. Upon information and belief, Experian did not investigate Debora's dispute and merely forwarded an automated dispute form to KIA. Rather than perform an investigation based on Debora's dispute, reasonably available public records, and information known by Experian through Plaintiffs' reported payment history regarding the KIA Account, Experian merely parroted information furnished by KIA, despite awareness that the information was factually inaccurate and conflicted with information known by Experian.

58. Upon information and belief, Wells Fargo and KIA failed to conduct a reasonable investigation after receiving notice of Plaintiffs' disputes from Equifax and Experian. Consequently, Wells Fargo and KIA continued to furnish inaccurate data to Defendants Equifax and Experian.

59. As a result of Defendants' conduct in violation of the FCRA, Plaintiff has sustained actual damages, including but not limited to embarrassment, anguish, and emotional and mental pain.

60. Upon information and belief, had Defendants Equifax and Experian accurately reported the Wells Fargo and KIA Accounts with Plaintiffs' actual/correct payment history, Plaintiffs' credit score and creditworthiness would have been better.

61. Defendants' conduct exacerbated Plaintiffs' frustration during the already stressful post-bankruptcy period by hindering Plaintiffs' ability to rebuild their credit.

62. Defendants Equifax and Experian's conduct reduced Plaintiffs' access to credit by reporting materially misleading and patently false information on their consumer credit report.

## COUNT I
## Defendants Equifax and Experian
## (Violations of the FCRA, 15 U.S.C. § 1681 *et seq.*)

63. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

64. The FCRA requires credit reporting agencies, like Equifax and Experian, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

65. Equifax and Experian violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and also by failing to report accurate information when placed on notice that the information Equifax and Experian were reporting was inaccurate and/or otherwise contradicted by information known by Equifax and Experian or reasonably available to Equifax and Experian.

66. Equifax and Experian knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Equifax and Experian from which they are on notice of their unreasonable procedures concerning the reporting of debts during and after bankruptcy.

67. Upon information and belief, Equifax and Experian regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports they sell to other parties.

68. Upon information and belief, Equifax and Experian voluntarily conducted public records searches and obtained information about Plaintiffs' bankruptcy filing and events.

69. The diligence Equifax and Experian exercise in recording consumer bankruptcy filings is not replicated in their reporting of the effect of bankruptcy proceedings and orders upon certain accounts, including the status of accounts that are reaffirmed, despite their knowledge thereof and the reported payment history by tradeline furnishers.

70. Consequently, Equifax and Experian routinely report inaccurate, incomplete, outdated, and materially misleading information about Plaintiffs, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when they possess information inconsistent with the reported information, and possess information establishing that the reported information is in fact inaccurate.

71. Equifax and Experian therefore negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to Plaintiffs.

72. Equifax and Experian inaccurately reported Plaintiffs' reaffirmed accounts as included in Plaintiffs' bankruptcy when Plaintiffs continued to make timely payments on the accounts, and remained liable for the accounts, which were excluded from their bankruptcy discharge.

73. The inaccurate reporting of Plaintiffs' information has caused Plaintiffs to suffer from stress, anxiety, headaches, frustration, emotional and mental pain and anguish, and a decreased credit score.

74. Even after Plaintiffs notified Equifax and Experian of the inaccurate information they included in Plaintiffs' credit file, Equifax and Experian continued to inaccurately report the reaffirmed accounts as included in bankruptcy.

75. When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

76. When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

77. Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

78. Thus, in addition to violating the FCRA by failing to follow reasonable procedures, Equifax and Experian additionally violated 15 U.S.C. § 1681i of the FCRA by failing to perform a reasonable reinvestigation of the disputed Wells Fargo and KIA Accounts even after Plaintiffs notified them of the inaccurate information each reported in Plaintiffs' credit files.

79. Equifax and Experian's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

i. Failing to reasonably reinvestigate the inaccurate information Plaintiffs disputed.

ii. Failing to consider all relevant information while investigating Plaintiffs' disputes.

iii. Failing to include all relevant information when notifying Wells Fargo and KIA of Plaintiffs' disputes.

80. Instead of reasonably reinvestigating Debora's disputes, Experian "verified" the KIA tradeline was accurate and continued to report the reaffirmed KIA Account as included in bankruptcy.

81. Instead of reasonably reinvestigating Debora's disputes, Equifax "verified" the Wells Fargo and KIA tradelines were accurate and continued to report the reaffirmed Wells Fargo and KIA Accounts as "included in bankruptcy."

82. Instead of reasonably reinvestigating Dana's disputes, Equifax "verified" the Wells Fargo tradeline was accurate and continued to report the reaffirmed Wells Fargo Account as included in bankruptcy.

83. Equifax and Experian's acts, as described above, were done willfully and knowingly, or, alternatively, negligently.

84. As a result of the foregoing violations of the FCRA, Equifax and Experian are liable to Plaintiffs for actual damages, statutory damages, attorneys' fees and costs, as described herein and as allowable by law.

**COUNT II**
**Defendants Wells Fargo and KIA**
**(Violations of the FCRA, 15 U.S.C. § 1681s-2(b))**

85. Plaintiffs incorporate by reference all the above paragraphs of this Complaint as though fully stated herein.

86. The FCRA requires that furnishers of information like Wells Fargo and KIA conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the credit reporting agency. If the investigation reveals the information is incomplete or inaccurate, furnishers must report those results to all credit reporting agencies to which the furnisher has provided the inaccurate information.

87. Wells Fargo and KIA knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. Wells Fargo and KIA obtained or had available substantial written materials that apprised them of their duties under the FCRA. Despite knowing these legal obligations, Wells Fargo and KIA acted consciously in breaching their known duties and deprived Plaintiffs of their rights under the FCRA.

88. Plaintiffs disputed the Wells Fargo and KIA tradelines through all three national CRAs: Experian, Equifax, and Trans Union.

89. Thereafter, the credit reporting agencies forwarded Plaintiffs' disputes to Wells Fargo and KIA, notifying Wells Fargo and KIA that Plaintiffs were disputing the information they had furnished about the Wells Fargo and KIA Accounts.

90. Wells Fargo and KIA received notice of Plaintiffs' disputes and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the disputes.

91. Wells Fargo and KIA continue to furnish inaccurate information about Plaintiffs to all three CRAs, even though Wells Fargo and KIA possessed all relevant information about the Wells Fargo and KIA Accounts and the inaccuracies that Plaintiffs disputed.

92. The inaccurate Wells Fargo and KIA Accounts materially and adversely affect Plaintiffs' credit standing.

93. On at least one occasion within the past two years, by example only and without limitation, Wells Fargo and KIA violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiffs' disputes reported to Equifax and Experian.

94. Wells Fargo and KIA violated 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violated 15 U.S.C. § 1681s-2(a), (b), including:

(a) Willfully and negligently failing to conduct an investigation of Plaintiffs' disputes, despite possessing knowledge, information, and records to substantiate Plaintiffs' disputes;

(b) Willfully and negligently failing to review all relevant information concerning Plaintiffs' disputes;

(c) Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

(d) Willfully and negligently failing to report to the CRAs that the disputed information was indeed inaccurate;

(e) Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiffs;

(f) Willfully and negligently continuing to furnish and disseminate inaccurate credit, account, and other information concerning Plaintiffs to the consumer reporting agencies, despite actual knowledge of the falsity of the reported information; and

(g) Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

95. Wells Fargo and KIA unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiffs' consumer information furnished to the national consumer reporting agencies.

96. Wells Fargo and KIA are a direct and proximate cause, as well as a substantial factor, in causing damage and harm to Plaintiffs.

97. Consequently, Wells Fargo and KIA are liable to Plaintiffs for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiffs are entitled to their attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request judgment be entered against Defendants for the following:

A. Declaratory judgment that Defendants violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury of all issues triable by jury.

Respectfully submitted this 21st day of January 2021.

By: */s/ Jenna Dakroub*
Jenna Dakroub
Bar Number: 0401650
**Price Law Group, APC**
8245 N. 85th Way
Scottsdale, AZ 85258
Telephone: (818) 600-5513
Facsimile: (818) 600-5413
Email: jenna@pricelawgroup.com
*Attorney for Plaintiffs,*
*Dana Maria Setzer-White and*
*Debora Jo Setzer*